## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JAMES DEGRACE,

    Plaintiff,

v.

                            CASE NO.:

CREDIT CONTROL LLC,

    Defendant.
_____/

## COMPLAINT

1. Unwanted "Robocalls" are the #1 consumer complaint in America today.

2. The people complaining about harassing robocalls is increasing at an alarming rate. In 2014, 1,949,603 complained to the Federal Trade Commission (FTC) and Federal Communications Commission (FCC), in 2015 this number was 2,636,477 and in 2016 it was 3,857,627. In 2017, between January and August alone the FTC received more than 3,500,000 robocall complaints.[1]

3. Defendant, Credit Control, LLC, robocalled the Plaintiff over 10 times without ever receiving the Plaintiff's express consent to do so.

4. Credit Control, LLC has a corporate policy to robocall people thousands of times.

5. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone

---

[1] It is important to recognize these merely reflect the number of individuals that complained to these agencies; the number of people that have been victimized by illegal robocalling abuse could be close to 100,000,000 in the last 3 years.

subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank*, F.S.B., 746 F. 3d 1242, 1256 (11th Cir. 2014). Despite the penalties put in place over 26 years ago, robocall abuse continues to skyrocket.

6. Plaintiff, James Degrace, alleges Defendant, Credit Control, LLC, robocalled him more than 10 times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

7. Robocalls are very inexpensive to make. As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." *Stopping Fraudulent Robocall Scams: Can More Be Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp.*, 113 Cong. 113-117 (2013) (statement of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

8. Congress enacted the TCPA to prevent companies like Credit Control, LLC from invading American citizens' privacy and prevent illegal robocalls.

9. Congress also enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

10. According to findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found,

automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

## JURISDICTION AND VENUE

11. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

12. Violations alleged in the Complaint occurred in New Port Richey, Florida.

## FACTUAL ALLEGATIONS

13. At all times material hereto Plaintiff, James Degrace, has resided in New Port Richey, Florida.

14. Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8) and 15 U.S.C. § 1692(a)(3).

15. Plaintiff is an "alleged debtor."

16. Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

17. Defendant is a Limited Liability Company and conducts business in the State of Florida.

18. Defendant is a "debt collector" as defined by Florida Statute § 559.55(7) and 15 U.S.C. § 1692(a)(6).

19. Plaintiff is the regular user and carrier of the cellular telephone number at issue, (727) 277-8223 and (727) 271-9833.

20. Plaintiff was the "called party" during each phone call subject to this lawsuit.

21. Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

22. Defendant did not have the Plaintiff's "express consent" to call his cell phone.

23. "Express consent" is narrowly construed by the courts.

24. It is Defendant's burden to prove it had the Plaintiff's "express consent" per the TCPA to call him on his cell phone using an "automatic telephone dialing system" (ATDS).

25. It is Defendant's burden to prove it had the Plaintiff's "express consent" per the TCPA to call him on his cell phone using an ATDS for each alleged account it was calling on.

26. Plaintiff put Defndant on notice that it was calling the wrong person, did not owe the alleged debt it was calling on, did not want to receive any further calls and to stop calling him.

27. Plaintif repeatedly told Defendant it was calling the wrong person and to stop calling him.[2]

28. Defendant did not have the Plaintiff's express consent to call him on the account(s) it mistakenly called him on.

29. Plaintiff unequivically revoked any express consent Defendant may have mistakenly believed it had for placement of telephone calls his aforementioned cellular telephone number by the use of an ATDS or a pre-recorded or artificial voice.

30. Defendant attempted to collect a debt from the Plaintiff, which the Plaintiff did not even owe, by this campaign of telephone calls.

31. Defendant made at least one call to (727) 277-8223 and (727) 271-9833.

---

[2] Defendant should have the call logs showing the exact number of calls and the recordings which should illustrate exactly what the Plaintif said to it.

32. Defendant made at least one call to (727) 277-8223 and (727) 271-9833 using an ATDS.

33. Defendant made at least ten (10) calls to (727) 277-8223 and (727) 271-9833.

34. Defendant made at least ten (10) calls to (727) 277-8223 and (727) 271-9833 using an ATDS.

35. Defendant made at least one hundred (100) calls to (727) 277-8223 and (727) 271-9833.

36. Defendant made at least one hundred (100) calls to (727) 277-8223 and (727) 271-9833 using an ATDS.

37. Each call the Defendant made to (727) 277-8223 and (727) 271-9833 in the last four years was made using an ATDS.

38. Each call the Defendant made to the Plaintiff's cell phone was done so without the the Plaintiff's "express permission".

39. Defendant has called other people's cell phones without their express consent.

40. Each call the Defendant made to the Plaintiff was made using an ATDS, which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

41. The calls at issue were placed by the Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

42. Plaintiff repeatedly requested the Defendant to stop calling his cell phone, however, the Defendant continued to do so.

43. Defendant has admitted to calling cell phones using an ATDS after that person asked for the calls to stop.

44. Defendant simply ignoried the Plaintiff's conversations with it, putting it on notice that it was calling the wrong person, that he did not owe the alleged debt, and to stop calling him.

45. Defendant has recorded at least one conversation with the Plaintiff.

46. Defendant has recorded numerous conversations with the Plaintiff.

47. Defendant has made at least (10) calls to Plaintiff's aforementioned cellular telephone number since in or about May 2017, which will be established exactly once Defendant turns over its dialer records.

48. Despite actual knowledge of its wrongdoing, the Defendant continued the campaign of abusive robocalls.

49. Defendant has been sued in federal court where the allegations include: calling an individual using an ATDS after the individual asked for the calls to stop.

50. By effectuating these unlawful phone calls, Defendant has caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

51. Defendant's aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in his cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

52. Defendant's phone calls harmed Plaintiff by wasting his time.

53. Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used." In re: *Rules Implementing the TCPA of 1991*, 23 FCC Rcd 559, 562 (2007). Defendant's phone calls harmed Plaintiff by depleting the

battery life on his cellular telephone, and by using minutes allocated to Plaintiff by his cellular telephone service provider.

54. Defendant's corporate policy and procedures are structured as to continue to call individuals like the Plaintiff, despite these individuals revoking any consent the Defendant may have mistakenly believed it had.

55. Defendant's corporate policy and procedures provided no means for the Plaintiff to have her aforementioned cellular number removed from the call list.

56. Defendant has a corporate policy of using an ATDS or a prerecorded or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

57. Defendant has numerous other federal lawsuits pending against it alleging similar violations as stated in this complaint.

58. Plaintiff expressly revoked any consent Defendant may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice immediately upon Defendant's placement of the calls.  Making money while breaking the law is considered an incentive to continue violating the TCPA and other state and federal statutes.

59. As alleged above, the Defendant never had the Plaintiff's express consent for placement of telephone calls to his aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice.

60. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

61. Defendant violated the TCPA repeatedly with respect to the Plaintiff.

62. Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff.

63. Defendant willfully violated the TCPA with respect to the Plaintiff each time it called the Plaintiff after he revoked his "alleged" consent to be called by it using an ATDS or pre-recorded voice.

64. Defendant knowingly violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialed calls made to Plaintiff's cellular telephone after Plaintiff revoked his consent to be called by them using an ATDS or pre-recorded voice.

65. Defendant, Credit Control, LLC, repeatedly placed non-emergency telephone calls to the wireless telephone number of Plaintiff using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

66. As a result of Defendant's illegal conduct, Plaintiff suffered actual damages and, under § 227(b)(3)(B), is entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the TCPA.

67. Plaintiff is also entitled to, and does, seek injunctive relief prohibiting Defendant, Credit Control, LLC, from violating the TCPA in the future.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, Credit Control, LLC, for statutory damages, punitive damages, actual damages and any other such relief the Court deems just and proper.

                Respectfully submitted,

                <u>William Bowles, Jr., Esq.</u>
                William B. Bowles, Jr., Esquire
                Florida Bar No. 0122998
                William Peerce Howard, Esquire
                Florida Bar No. 0103330
                The Consumer Protection Firm
                4030 Henderson Boulevard
                Tampa, FL 33629

Telephone: (813) 500-1500
Facsimile: (813) 435-2369
BillBowles@TheConsumerProtectionFirm.com
Billy@TheConsumerProtectionFirm.com
*Attorney for Plaintiff*